WILLIAM WOLLS *v.* P. D. COLLINS AND FRANK TRUXILLO.

*Where the wife retains the administration of her paraphernal property, the husband has no right to give a privilege to sub-lease, or exercise any other power concerning it, without her authority.*
*A lease is a commutative contract, and as to the resolutory condition, is governed by the dispositions of Articles 2040, 2041.*

**A**PPEAL from the Sixth District Court of New Orleans, *Howell,* J. *Durant & Hornor,* for plaintiff.

*T. Wharton Collens, for defendant and appellant.*—I. The law regards only a willful indisposition to pay or an unreasonable neglect to pay, or a decided inability to pay, as a valid ground for the dissolution of a lease. When the lessee is able, willing and ready to pay, and has been deterred

from doing so at the exact date, either from accident, mistake and the like, he will not be visited with the penalty designed to protect the lessor against the default of an unwilling or insolvent lessee. In all cases where the lessee is in good faith, and evinces not only a desire but an ability to pay, even after suit, the Court will not dissolve the contract, but in some cases will even grant further time. This is the express law of our State. In cases "where the resolutory condition is an event not depending on the will of either party, the contract is dissolved by right; but in other cases it must be sued for, and the party in default may, according to circumstances, have further time allowed for the performance of the conditions." So says Article 2042 of our Civil Code, and Article 2184 of Code Napoleon. Your Honors will find under the word "bail," in Villeneuve's Jurisprudence, a number of cases like ours, where the lessee has been allowed the benefit of the article we invoke. Much less will the law dissolve a contract, when the conduct of a creditor (as in this case) has been such as to deter, postpone, waive, prevent, or mislead the debtor so as to entrap him into a technical default. (C. C. 2035, Hennen's Digest, old ed. p. 1072, No. 6; same ed. p. 1101, No. 2, p. 2102, No. 20.) No one can take advantage of his own wrong or laches. On the above point, see also Devilleneuve, verbo "Bail," vol. 1, p. 274 et seq. No. 196 (bis.) also Nos. 198, 200, 210 and 211. Duvergier, vol. 1, N. 474. Troplong, Louage, vol. 2, N. 320, and Perlin, Rep. verbo Bail, 37, N. 2.

II. The grounds on which the written consent H was excluded, are wholly fallacious. They are these : That it is not signed by Mrs. Emmerling, but by her husband, nor was there any written power from her to Emmerling, authorizing him to sign the same. That evidence of authority of equal dignity to that required by the contract of lease, for the consent itself must be produced. That the clause of the lease requiring a written consent from Mrs. Emmerling, was the law of the parties.

The District Judge expresses it thus : The sub-lease was without the consent of the lessor. He considered Mrs. Emmerling as standing legally in the same relation to her husband, in regard to his power to administer for her, as she would towards a stranger. He, as well as a stranger, must produce written power to transact her affairs. Besides this, it is assumed all through, contrary to law and the evidence, that the premises leased were the paraphernal property of the wife.

To this we have two plain answers:

1. We have written evidence of authority for Emmerling to act for his wife, even of higher dignity than a written mandate in Mrs. Emmerling's own hand. We mean the written and promulgated law of Louisiana. See Louisiana Code 2327, 2329, 2330, 2361, 2362, 2394, C. p. 107. We have shown that Emmerling supervised the property, made the agreements for renting out, collected the rents, held the rent notes, and that when applied to in relation to the transfer of the lease, his wife referred

to him. Hence, it is expressly shown that he was her agent. See 8 Rob. 226; 7 N. S. 143; 11 L. 288, and Story on Agency, §§ 50 to 54 et seq. But it was not necessary for us to adduce any proof whatever of the husband's authority to represent his wife in matters of this kind. Leasing houses and consenting to take one tenant in place of another are acts of administration.

The paraphernal property of the wife is presumed by law to be under the management of her husband, unless administered by her separately and alone. 14 An. 281, Hen. (old ed.) 925, No. 2, p. 927, No. 26. And see the cases 18 L. 431; 6 Rob. 41; 4 Rob. 114; 12 Rob. 524; 2 An. 891; 6 R. 64; 9 L. 350.

The fruits of paraphernal property belong to the community; and therefore the lease and the rents in this case belonged to the community. Hen. (old ed.) p. 930, Nos. 22 and 23. Webb v. Pitt, 7 An. 92. On this subject of written consent, see De Villeneuve, vol. 1, p. 273, No. 145. Troplong, Echange et Louage, vol. 1, p. 343, No. 241.

2. But the preceding argument concedes that the property was paraphernal. This is by no means shown; and we are not bound to make this concession. It is true that the property was bought in the name of the wife, but there is not even a declaration that it was bought with her separate funds. Keller, from whom the property was bought says, pp. 9 and 10, he bargained exclusively with Emmerling, the husband. The fact that it was bought in her name, does not make a particle of difference as to the status of the property; it belonged to the community. If it be so with regard to the property itself, it is so a fortiori with regard to the lease. The husband being head and master of the community had a right even to sell the property belonging to it, though bought in his wife's name. A fortiori had he a right to consent to a transfer of the lease from one tenant to the other. Louisiana Code, 2371, 2372 and 2373; and numberless decisions, Hen. (old ed.) p. 930, Nos. 7, 10, 11. The fact, says the Court, that the title was taken in her name, does not even create a presumption in her favor.

In whatever light we regard the property and lease, we have the consent of the lessor. If the lease was Mrs. Emmerling's, we have the consent of the representative the law has appointed to administer her estate. Qui facit per alium facit per se. If it is community property, we have the consent of the head and master.

III. Having thus disposed of the two principal grounds of the judgment, it may not be amiss to go back and say a word in relation to the competency of Collens as a witness in this case, although his testimony is not indispensible. It suffices to remind the Court that he was released by us. 12 An. 208. He was in no wise in the way of plaintiff's recovering the possession. He was only a nominal defendant. Even the plaintiff did not deem it necessary to proceed to judgment against him. He was not cited till after the trial begun. He did not answer till after the case

W. Wolls v. Collins and Truxillo.

was submitted. If the transfer of the lease was maintained, he remained security that Truxillo would pay the rent notes, but if the lease was dissolved all subsequent rent notes were necessarily annuled. So that his interest, if any, weighed on the side of plaintiff. In maintaining the consent given by Emmerling, he maintained his own liability to plaintiff. That such a witness is competent for defendant, the authorities abundantly show. See 9 An. 67; 11 An. 601; 14 An. 693; Hen. (old ed.) p. 546, Nos. 1, 2, 3, 4; p. 500, No. 3; p. 553, Nos. 3, 4, 5; p. 551, No. 8; and particularly p. 556, Nos. 24 and 25.

IV. But, admitting, for argument sake, that we are in error on the above points. Then we say the plaintiff could not demand possession without tendering back the subsequent rent notes, and offering to pay for the improvements which we erected for him on the property only on the condition of enjoying it to the end of the lease. In dissolving a contract, the parties must, as much as possible, be restored to their original condition towards each other. Louisiana Code, p. 2040. The obligation to build the cottage house was the same in effect as a promise to pay so much money in advance on account of the whole term of the lease. It is just the same as if the lease was delivered at a certain price for the whole term, payable $1,000 in advance, and the balance in notes payable from time to time. Hence, if the lessor seeks to dissolve the lease before the term stipulated, he must tender back a due proportion of the sum paid in advance. It certainly cannot make any difference if, instead of paying money, the tenant has paid by expending money to build a house for the lessor. See Duranton, vol. 17, No. 89, p. 73 ; Devilleneuve, vol. 1, p. 274, No. 94.

The unaccrued rent notes were in a negotiable form. The plaintiff may have had them in his possession or may have passed them to others. He does not show what has become of them. - If he has transferred them to others, he had no further interest to expel Truxillo after the deposit of the amount of the two rent notes he held. If he still held those notes, he should have shown the fact, and his readiness to restore them upon the dissolution of the lease. As the matter stood, after the expulsion of Truxillo, a third innocent holder might have presented himself and demanded payment of the rent notes.

LABAUVE, J. On the 22d of January, 1859, Mrs. Marie Anaïse Dreville, by act under private signature, leased to P. D. Collins two lots of ground with all the appurtenances, from the 1st of February, 1859, until the 1st of February, 1862, at the rate of $25 per month, payable every sixty days, in his notes of $50 each. The lessee obligated himself to build on the property a cottage house for the use of his family, and said buildings to be kept in good order and to revert to the owner of the lots after the expiration of the lease, on the 1st February, 1862; and it was expressly

40

stipulated that the said lessee should not sub-lease without the written consent of .the lessor, who reserved the right of annulling the lease in case the lessee should, at any time, fail to pay the rent as stipulated, or otherwise violate this contract.

This lease was transferred by the lessor on the 11th May, 1860, to the plaintiffs, in the following words written on the private act of lease: "I hereby transfer this lease, such as it is, to William Wolls, against P. D. Collins." Signed by the lessor and her husband.

By public act of sale passed on the 11th May, 1860, the said plaintiff bought of the said lessor the said leased lots, together with all the appurtenances, buildings, privileges, etc. In this act of sale, the vendor declares the dispositions contained in the lease, and transfers the same, such as it is, to her vendee.

The lessee also transferred the lease to Frank Truxillo, as follows:

New Orleans, October 1st, 1859. I hereby transfer all my interest in and to the within lease, unto Mr. Frank Truxillo, for value received, and also guarantee that said Mr. Frank Truxillo will comply with all the stipulations of said lease. Signed by P. D. Collins, Frank Truxillo.

Now, this suit is brought by the transferree of the lease against the original lessee and the sub-lessee, to set aside and annul the lease, and to recover possession of the property leased, on the grounds that P. D. Collins, the original lessee, has violated the stipulations contained in said lease in two particulars: in not paying the rent when due, and in subleasing the premises without the written consent of the lessor; and that he has failed to erect a cottage house for the use of his family, and the buildings were to revert to the owner of the lots, etc.

He prays that both the original and the sub-lessee be cited and be condemned in solido to deliver to petitioner the possession of the leased premises.

The answer contains a general denial, but admits the lease, and that the same has been transferred to said Frank Truxillo, but with the consent of the lessor by her husband L. Emmerling, the head of the community, for himself and wife, in whose name the property stood, he being also agent, and having the administration of the property in question, with her consent. That respondent has been always ready and willing to pay the rent; but since the said Wolls has acquired the property, he has failed to make an amicable demand for said rent, and that respondent made legal tender of said rent to said Wolls, who refused to receive the same, etc.

On the trial of the case below, the defendant offered in evidence the written consent of the lessor's husband, authorizing P. D. Collins to transfer the lease in question to Frank Truxillo; it was objected to, and the objections sustained by the Court.

We are of opinion that the Court decided correctly. The property was

leased by the wife as her own property, and the lessee cannot now dispute it; he contracted with the wife, and the very fact of her leasing the property herself, shows that she retained the control and administration of it so far, at least, as the lease was concerned; and the reserve that the property should not be sub-leased without her consent in writing was a part of the contract of lease.

There are other bills of exception which, in our opinion, require no decision, as the result would be the same on the merits of the case.

Two grounds are clearly established:

1. That the lessee has failed to pay two notes given for the lease; they were payable at the Mechanics and Traders' Bank, and protested for non-payment on the 8th August, 1860.

The transfer of the sub-lease by P. D. Collins to Frank Truxillo is clearly proved, and admitted besides, and the defendant has failed to show the consent in writing of the lessor.

2. Two of the notes were not paid for want of funds in the bank where they were payable and protested.

But we think that the plaintiff, in order to recover, should have done more, by alleging and proving a tender of the notes given for the unexpired balance of the lease at the time he claimed the dissolution of the same. It is in evidence and admitted that, when the parties entered into said contract of lease, the lessee, P. D. Collins, executed his notes for the whole term of the lease, to his order and by himself endorsed, payable at the Mechanics and Traders' Bank, and these notes are shown to have been transferred and delivered to the plaintiff when the lessor sold him the property leased together with the lease.

It is also in evidence, and admitted in the appellee's brief, that the cottage house was built. The plaintiff has failed to show what has become of the unaccrued rent notes; they have not even been produced on trial as a tender. The plaintiff could not expect to take the property back with the cottage house, and retain also the notes. A lease is a commutative contract, and as to the resolutory condition, is governed by the dispositions of Arts. 2040, 2041. Duranton, vol. 17, 110, 89.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed. It is further adjudged and decreed, that there be a judgment of nonsuit against the plaintiff, in favor of the defendants, and that the plaintiff and appellee pay costs in both Courts.

Howell, J., recused.